Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50373 Consolidated with 02 C 50502 | **DATE** | 9/29/2003 |
| **CASE TITLE** | Forrestville Board of Education, et al vs. Illinois State Board of Education, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, the district's motion for summary judgment is granted. Alex's motion for summary judgment is denied. The decision of the hearing officer is reversed. Alex's request for attorneys fees, which was filed as case number 02 C 50502 and consolidated with this case, is denied.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 3 0 2003 | 5 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 9-29-03 | |
| /SEC | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

(Reserved for use by the Court)

# MEMORANDUM OPINION AND ORDER

Plaintiff, Forrestville Valley Community Unit School District # 221 ("District"), filed this action under the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. § 1401 et seq. and section 14-8.02a of the Illinois School Code, 105 ILCS 5/14-8.02a, to review and reverse the decision of a special education hearing officer appointed by the Illinois State Board of Education ("ISBE") concerning Alex R., a minor, and student residing in the District's jurisdiction. The hearing was held on Alex's claim (brought through his mother) that the District denied him a free appropriate public education ("FAPE") during the period September 2000 through November 2001. The hearing officer decided Alex had been denied a FAPE and ordered certain remedies. Jurisdiction is proper pursuant to 20 U.S.C. § 1415 (i) (3) (A). The court considers the administrative record and new evidence submitted to the court and will reverse the hearing officer's decision if it is contrary to the preponderance of the evidence. Id. § 1415 (i) (2) (B); School Dist. of Wisc. Dells v. Z.S., 295 F.3d 671, 675 (7th Cir. 2002). When no new evidence is received, the court must give deferential review to the hearing officer's decision. Z.S., 295 F.3d at 675. Both sides have submitted new evidence. The parties have filed cross-motions for summary judgment.

The IDEA entitles a disabled child to a "free appropriate public education" tailored to his disability. Id. at 672. The statute expresses a strong preference for teaching the child in the "least restrictive environment," id., with children who are not disabled, unless "the nature or severity of the disability . . . is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412 (a) (5). The IDEA requires an Individual Education Program ("IEP") to be developed for a disabled child. See id. § 1414 (d). In determining whether a child is receiving a FAPE the court looks to whether the district (1) complied with IDEA's procedural requirements and (2) developed an IEP that is "reasonably calculated to enable the child to receive educational benefits." Board of Educ. of Hendrick Hudson Central Sch. Dist., Westchester County, v. Rowley, 458 U.S.176, 206-07 (1982); Z.S., 295 F.3d at 677. The hearing officer found the District met IDEA's procedural requirements, satisfying the first prong of the Rowley test but failed the second prong by not developing and implementing an adequate IEP. The issue before the hearing officer was whether the District was unreasonable in the IEP it developed and in carrying it out during the September 2000 through November 2001 period. See id. at 376. While Alex argues based on Cedar Rapids Cmty. Sch. Dist. v. Garret F., 526 U.S. 66 (1999), that cost to the District cannot be a factor in providing a FAPE, cost is a relevant consideration and cost includes the disruptive impact on other children. Z.S., 295 F.3d at 672.

Alex suffers from Landau-Kleffner Syndrome Variant which is primarily a speech and language disorder. The District provided Alex with educational and behavioral supports including classroom and individual aides, preferential seating, movement breaks, hand signals, visual schedules and other visual cues, social stories, reward systems, daily communication notebooks with his mother, positive peer modeling and re-teaching. The record reflects that over the course of his school career Alex was often distracted, got off-task, talked to "pretendy friends," refused to do his schoolwork, and engaged in angry or defiant behavior when not permitted to do what he wanted to do. His off-task and task-avoidance behaviors began to increase during second grade (2000-2001) and it became more difficult to redirect him. Alex's behavior worsened after the beginning of third grade (fall 2001) as he began to act out more frequently and became more difficult to redirect. On September 25, 2001, during a field trip, Alex filled a glove with rocks and struck a number of other students with it. On October 3, 2001, Alex left the school building, crossed the street to a body shop, and swung a piece of sheet metal at school personnel who came to bring him back. He did not cooperate in returning and they carried him back to school while he dragged his feet. On October 11, 2001, Alex began pacing in the back of the classroom verbalizing loudly, got his backpack and began swinging it near students and desk top computers. He charged his individual aide, hitting her. He dropped to the floor and began rolling around the room near students' desks and then near the legs of a folding table holding computer equipment. Alex was removed to an adjoining room where he paced, verbalized, imitated karate-style chops and kicks, charged his teacher, rammed her into the classroom door, and clawed her leaving scratch marks on her chest. After this incident, Alex's mother filed a charge with the state Department of Children and Family Services (DCFS) alleging Alex was kicked by his teacher during these events. The DCFS investigation concluded with a "no finding." A sheriff's department investigation based on a complaint by Alex's mother resulted in no charges being filed against the teacher. On October 19, 2001, Alex left school during the day and walked home while being followed by an aide and the principal. On October 22, 2001, Alex became disruptive in class, the other students were evacuated and Alex pulled papers off the wall and tore them up, searched other students desks taking pencils and biting them in half and kicked a bucket of Legos across the room. Alex's mother requested he be transferred to another school to be reunited with his prior year second grade teacher. On October 26, 2001, Alex began at the new school. Around lunchtime a DCFS caseworker appeared to investigate a charge against Alex's mother concerning Alex relating to something occurring at home. Alex met with the caseworker in a conference room, left the room rolling on a chair, rolled into his classroom hitting another student and ramming into the teacher several times. Alex left the building, followed by a staff member eventually ending up alone in a cornfield where he was found after a several hour search sitting in a muddy river. He was taken to a hospital and treated for hypothermia. After this incident, Alex was placed in a self-contained program for students with behavioral disorders.

The record in this case is voluminous including many documents covering Alex's school career. These documents reflect an ongoing, mostly positive, interaction between District personnel and Alex's mother concerning Alex's educational needs and goals. The record contains copies of the daily communication notebooks between Alex's mother and his teachers which shows they were working closely together to best educate Alex. The events of September and October 2001 described above changed that relationship.

The question before the court is whether the District was unreasonable in its development and implementation of Alex's IEP. A thorough review of the record reveals the District was not unreasonable. The District developed an IEP for Alex and continually updated and evaluated it. The faculty and staff worked to implement this plan and worked co-operatively with Alex's mother to provide modifications as needed. They were particularly responsive to his mother's requests concerning whether to undertake a formal behavior implementation plan ("BIP"). They initially honored her request to proceed informally when Alex was in kindergarten and in the spring of 2001 agreed with her to gather data and to proceed with a BIP in the fall. The events of the fall of 2001 described above unfolded rapidly and the District IEP team met frequently to try to adjust to the rapidly deteriorating situation. Prior to September 2001, the District cannot be said to have acted unreasonably in its education of Alex. From September through November of 2001, the District acted reasonably in attempting to deal with an increasingly difficult situation affecting not only Alex but the other students as well. The District acted in a manner that was reasonably calculated to enable the child to receive educational benefits. See Rowley, 458 U.S. at 206-07. The unfortunate events of October 2001, while traumatic to all involved, did not deny Alex a FAPE. The District acted to deal with these events through the IEP process.

Alex presented expert testimony to the effect that the District did not do what it should have to appropriately educate Alex. It may be true the district could have done a better job or had a better grasp of the needs Alex had or been better trained to deal with his problems. However, the District did not act unreasonably given the circumstances it faced. The District took a thoughtful, measured approach to Alex's education. The hearing officer substituted her judgment for that of the school administrators. The hearing officer thought the administrators were mistaken and they may have been. However, the administrators were not unreasonable. See Z.S., 295 F.3d at 677. The District's motion for summary judgment is granted. Alex's motion for summary judgment is denied. The decision of the hearing officer is reversed. Alex's request for attorneys fees, which was filed as case number 02 C 50502 and consolidated with this case, is denied.

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

Alex R., et al.

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 02 C 50502

Forrestville Valley Community Unit
School District #221

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■     Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that that the district's motion for summary judgment is granted. Alex's motion for summary judgment is denied. The decision of the hearing officer is reversed. Alex's request for attorneys fees, which was filed as case number 02 C 50502 and consolidated with this case, is denied.

Michael W. Dobbins, Clerk of Court

Date: 9/29/2003

Susan M. Wessman, Deputy Clerk